## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIA
### West Palm Beach Division

CASE NO. _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| TJ BIOTECH LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| AGROSOURCE, INC | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

### COMPLAINT

Plaintiff, TJ BioTech LLC ("Plaintiff" or "TJ BioTech"), by and through its undersigned counsel, files this Complaint for patent infringement and false advertising in violation of the Lanham Act, the Florida Deceptive and Unfair Trade Practices Act, and Florida Statute § 817.40, *et seq.*, against AgroSource, Inc. ("Defendant" or "AgroSource"), and alleges as follows:

### Nature of the Action

1. TJ BioTech's claims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. §§ 271 and 281-85; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*; Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213; and Florida Statue § 817.40, *et seq.* (misleading advertising).

2. TJ BioTech is a leader in developing agricultural products to improve the profitability of farms and groves, including citrus groves facing the devastation of Huanglongbing (HLB), also known as Citrus Greening Disease. TJ BioTech is the owner of all right, title, and interest in United States Patent No. 12,382,956 (the "'956 Patent" or the "Asserted Patent"), entitled "Antimicrobial Compositions and Methods for Treating Plant Diseases."

3.     TJ BioTech brings this action to: (i) compel AgroSource to cease its direct and indirect infringement of TJ BioTech's patent rights in the '956 Patent based on AgroSource's unauthorized commercial manufacture, use, offer for sale, sale, and/or importation of its Rectify™ product in violation of TJ BioTech's patent rights; (ii) compel AgroSource to cease its false, deceptive, and misleading advertising and/or trade practices related to AgroSource's promotion and marketing of its Rectify™ product; and (iii) compel AgroSource to compensate TJ BioTech for the harm caused by AgroSource's unlawful actions.

### Parties

4.     TJ BioTech LLC ("TJ BioTech") is a limited liability company, with its principal place of business at 12458 Old Highway 85, Buffalo, South Dakota, 57720.

5.     Defendant AgroSource, Inc. ("AgroSource") is a corporation, with its principal place of business at 166 Beacon Lane, Jupiter, Florida.

6.     AgroSource may be served through its registered agent, Taw Richardson, at 166 Beacon Lane, Jupiter, Florida.

### Jurisdiction and Venue

7.     The Court has subject-matter jurisdiction over the claims raised in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Patent Act, 35 U.S.C. 35 U.S.C. §§ 1 *et seq*., including 35 U.S.C. §§ 271, 281, and 284, among others. The Court also has subject-matter jurisdiction over the claims raised in the action pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) *et seq*. The Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367(a) because they are related to TJ BioTech's Lanham Act claim and form part of the same case or controversy underlying that claim.

8.     This Court has personal jurisdiction over the Defendants by virtue of, *inter alia*, its principal place of business in Jupiter, Florida; its appointment of a registered agent in Florida; its

conduct of business in this District; its purposeful availment of the rights and benefits of Florida law; and its substantial, continuous, and systematic contacts with Florida and this District. AgroSource further intentionally markets and sells Rectify$^{TM}$, which thereby indirectly infringes TJ BioTech's patent rights and which when used directly infringes TJ BioTech's patent rights, directly and through agents to residents of Florida; intentionally falsely advertises its products to residents of Florida; enjoys substantial income from the state of Florida; and directly, by its own actions or in combination with actions of customers and others has committed acts of direct or indirect infringement in this District at least by making, using, and/or selling infringing products and using, selling, and offering for sale Rectify$^{TM}$, which when used infringes TJ BioTech's patent rights.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(b) because AgroSource has its principal place of business in the state of Florida and this District and because a substantial part of the events giving rise to TJ BioTech's claims occurred in this District.

## Background

### I.      Factual Background

#### A.      TJ BioTech and ReMedium TI®

10.      TJ BioTech was founded by Thomas D. Johnson with his wife Gail L. Parfrey in 2021. Mr. Johnson has been engaged in the development of products for the agricultural industry for over 40 years. Mr. Johnson continues his work through TJ BioTech, a limited liability company.

11.      As background, HLB is a disease that infects citrus trees in a way that degrades the fruit and slowly kills the tree. HLB is currently the most significant threat to the global citrus industry.

12.      Since around 2005, HLB has spread throughout Florida and has killed countless citrus trees, has devastated orchards, and has significantly reduced citrus production resulting in economic production of citrus being no longer possible. For example, by 2022, Florida citrus

production has been reduced by more than 70%. In the United States, the disease has now moved west to Louisiana, Texas, and California.

13.     HLB is spread by the Asian citrus psyllid, a small insect that carries Candidatus Liberibacter asiaticus (*C*las), a phloem-inhabiting proteo-bacteria. The Asian citrus psyllid transmits the disease as they feed on citrus shoots and leaves. Once HLB is established, it is highly damaging to citrus, causing reduced tree health and vigor, leaf chlorosis, tree canopy and root biomass, a reduced quantity of yield, reduced quality of yield both internally and externally, increased fruit drop, misshapen fruit, and eventually the death of the tree.

14.     Although growers have attempted to utilize a variety of strategies to control and manage HLB since 2005, these strategies have not been successful, and citrus production has continued to decline. Because the pathogen is located within the vascular system (phloem) of the citrus, foliar applied treatments have not been successful. Indeed, aerial applications of the antibacterials oxytetracycline ("OTC") and streptomycin intended to control HLB-associated bacteria have not shown significant efficacy at reducing bacterial load in citrus.

15.     To overcome the devastation caused by HLB, Tom Johnson invented a novel method of generating an acidified antibiotic solution for its use in treating a bacterial infection in a plant. Mr. Johnson developed ReMedium TI®, marketed by TJ BioTech, to practice his novel method of using an antimicrobial (bactericide) to control the bacterial cause of HLB and treat the plant disease. Prior to TJ BioTech's development of ReMedium TI®, there was no commercial citrus management program that has effectively reduced the harmful effects of HLB from ravaging citrus groves.

16.     ReMedium TI® is for use as a systemic injectable antimicrobial for the control or suppression of HLB that includes pharmaceutical grade Oxytetracycline Hydrochloride. Prior to injection, ReMedium TI® is added to water which has been buffered to a pH range of 1.8 to 2.0 at a

desired concentration of 1,100 ppm, 5,500 ppm, or 11,000 ppm depending on tree health, whether it is bearing citrus, and tree size. Subsequently, the formulated ReMedium TI® is systemically delivered to citrus through injection into the trunk, preferably following harvest. Exhibit 1, ReMedium TI® Label.

17.     Due to the crisis of HLB in Florida, ReMedium TI® received Special Local Needs approval from the Florida Department of Agriculture and Consumer Services ("FDACS") under Section 24(c) of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") on October 28, 2022. Exhibit 1, ReMedium TI® Label.

18.     The use of ReMedium TI® has shown to significantly increase the production of citrus and has received widespread acclaim and praise. For example, Rick Dantler, the chief operating officer of the Citrus Research and Development Foundation ("CRDF") has praised TJ BioTech's OTC treatment, saying he has "heard growers say in public forms that it is, hands down, the most effective and promising therapy of anything they have tried…. Root mass is being restored. Trials show substantially better fruit quality and stabilization of yield when compared to untreated trees." The column further notes that there is reduced *C*las acquisition in the gut of psyllids, and that positive results are being seen on all rootstocks and scions. Exhibit 2, CRDF June 2024 Article.

19.     Further, through the extensive research efforts of TJ BioTech, TJ BioTech's ReMedium TI® has overcome the failure of others. For example, the use of trunk injection to deliver OTC to citrus has been the subject of extensive study for decades, however, there has not been a commercially available antibiotic solution for treating a bacterial infection in a perennial plant until the commercial launch of ReMedium TI® in January 2023. TJ BioTech overcame the failure of previous development efforts that went against prior industry beliefs that the pH of the OTC formulation is unimportant and/or should not be acidified because the industry belief was that

a pH of below 4.0 would be injurious to trees. Exhibit 2, CRDF June 2024 Article.

20.     To protect its investments in researching, developing, and commercializing ReMedium TI®, TJ BioTech has invested in securing patent protection for the method of using ReMedium TI® to control HLB, and for citrus treated by ReMedium TI®.

21.     Upon entering the market, ReMedium TI® enjoyed great commercial success, achieving many millions in sales in just the weeks following its introduction to the market. However, that commercial success was short lived due to the direct copying of ReMedium TI® by AgroSource through its Rectify™ product, who was aware that TJ BioTech was pursuing patent protection for the use of ReMedium TI®.

### B.     The Asserted Patent

22.     TJ BioTech is the owner of all right, title, and interest in United States Patent No. 12,382,956 (the "'956 Patent" or the "Asserted Patent"), with full right to bring suit to enforce the '956 Patent, including the right to sue for past, present and future infringement. A true and correct copy of the '956 Patent is attached to this Complaint as Exhibit 3.

23.     The '956 Patent was legally issued by the United States Patent and Trademark Office ("USPTO") on August 12, 2025 after a full and fair examination by the USPTO of Application No. 17/516,229, which was filed on November 1, 2021. The '956 Patent names TJ BioTech's founder Thomas D. Johnson as the sole inventor, who assigned his invention as disclosed in the '956 Patent to TJ BioTech. See Exhibit 4, Assignment.

24.     The '956 Patent is valid and enforceable.

25.     Independent claim 1 of the '956 Patent claims:

> A method of generating an acidified antibiotic solution and for its use in treating a bacterial infection in a plant, the method comprising the steps of:
> adding an antibiotic to a solvent in an amount sufficient to generate a first solution having a concentration of the antibiotic sufficient to treat the bacterial infection in the plant;

titrating the first solution using an acid to generate a second solution having a pH of from 1.5 to less than 4.0;

delivering the second solution systemically to a plant; wherein the solvent comprises water;

the acid comprises an inorganic acid titrated into the first solution in an amount sufficient to generate the second solution having a pH of in a range of 1.8-2.5;

the antibiotic comprises oxytetracycline or streptomycin;

the antibiotic has a concentration of 500 to 25,000 parts per million; and

the inorganic acid comprises hydrochloric acid.

26.     The use of ReMedium TI® practices the method of claims 1-3 of the '956 Patent, as well as the elements of claim 4 for citrus treated according to the method of claim 3.

### C.     AgroSource's Direct and Indirect Patent Infringement

27.     AgroSource is a global agricultural life science company that manufactures, markets, offers for sale, and sells Rectify™, which AgroSource markets as a superior formulation for the management of Citrus Greening Disease (HLB) under a purported "me too" label to TJ BioTech's label for ReMedium TI®. Rectify™ is available for use only in Florida under a Section 24(c) Special Local Needs (SLN) approval by the Florida Department of Agriculture and Consumer Services ("FDACS").

28.     AgroSource received approval for its label on January 30, 2023 and began selling Rectify™ in February 2023. Exhibit 5, Rectify™ Label.

29.     Upon information and belief, to receive approval for the Rectify™ Label, AgroSource relied on the residue testing data conducted and submitted to FDACS by TJ BioTech with respect to ReMedium TI®.

30.     The Rectify™ Label informs Rectify™ users that "[i]t is a violation of State and Federal law to use [Rectify™] in a manner inconsistent with its labeling. Persons using this product must comply with all applicable directions, restrictions, and precautions found on this labeling." Exhibit 5, Rectify™ Label at p. 5.

31.     As detailed in the attached claim chart, AgroSource, and users of Rectify™, including AgroSource's customers, directly infringe independent claim 1 of the '956 Patent when they follow the Rectify™ Label. Likewise, users of Rectify™, including AgroSource's customers, directly infringe dependent claim 2 when they follow the Rectify™ Label. Users of Rectify™, including AgroSource's customers, also directly infringe the method of independent claim 3 of the '956 Patent, as well as claim 4, which is directed to citrus treated according to the method of claim 3, when they follow the Rectify™ Label. See Exhibit 13.

32.     For example, a user following the Rectify™ Label directly infringes at least claim 1 of the '956 Patent.

33.     The Rectify™ Label discloses that Rectify™ includes the antibiotic OTC and "is a systemic injectable bactericide for the control of *Candidatus* Liberibacter asiaticus (*C*las) or suppression of Huanglongbing (HLB, Citrus Greening) for Citrus Group 10-10". The user generates the acidified antibiotic solution by combining water, an acid, and Rectify™ for its use in treating HLB, a plant disease, in citrus via trunk injection.  Exhibit 5, Rectify Label.

34.     The Rectify™ Label's "Mixing Directions" provide instructions for generating the acidified antibiotic solution. The Rectify user is required to use water as a solvent and to measure the water to create a desired batch size. The user adds muriatic acid (i.e. hydrochloric acid), which is an inorganic acid, to the water to generate a solution wherein the muriatic acid is used to buffer (titrate) the solution down to a pH range of 1.8 to 2.0, which results in a solution having a pH of from 1.5 to less than 4.0. The user is required to add a calculated amount of Rectify™ to achieve the recommended concentration wherein the recommended concentrations of Rectify in the solution are 11,000 ppm, 5,500 ppm, and 1,100 ppm, which achieves a concentration of the OTC in the solution that is sufficient to treat the bacterial infection in the plant.[1] The Rectify™ Label's

---

[1] As disclosed in the Specification of the '956 Patent, the step adding the acid may be performed

"Injection Directions" further require the user to systemically deliver the formulated Rectify$^{TM}$ to citrus via trunk injection. Exhibit 5, Rectify$^{TM}$ Label at p. 7-8.

35. AgroSource's use of Rectify$^{TM}$, and Rectify$^{TM}$ end-users use of Rectify$^{TM}$, in citrus to treat HLB directly infringe the method of claim 1-3 of the '956 Patent and claim 4 directed to citrus treated according to the method of claim 3.

36. By offering for sale and selling Rectify$^{TM}$, while having knowledge of or being willfully blind to the existence of the '956 Patent and directing users to use Rectify$^{TM}$ in an infringing manner, AgroSource actively and knowingly induces the infringement of one or more of claims 1-4 of the '956 Patent.

37. By offering for sale and selling Rectify$^{TM}$, while knowing that Rectify$^{TM}$ is especially adapted for use in an infringement of one or more of claims 1-4 of the '956 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses, particularly in view of TJ BioTech's '956 Patent, AgroSource has contributed to the infringement of one or more of claims 1-4 of the '956 Patent.

38. AgroSource's infringement is willful and deliberate. Despite being aware of TJ BioTech's pending patent application through letters sent to AgroSource, which asserted TJ BioTech's provisional patent rights, AgroSource has continued its infringing activities through the issuance of the '956 Patent, demonstrating a flagrant disregard for TJ BioTech's intellectual property rights. See Exhibits 6 and 7, TJ BioTech Letters to AgroSource.

39. AgroSource has known or should have known that the use of its Rectify$^{TM}$ will infringe one or more claims of the '956 Patent upon its issuance, directly or indirectly, since at least February 9, 2023, when TJ BioTech brought the existence of pending Patent Application Number

---

before the step of adding the antibiotic. See Exhibit 3 at 4:18-22 ("As will be apparent to those of ordinary skill in the art, the order of addition of the antibiotic and the acid to the solvent can be reversed upon determination of the quantities of each required to achieve a desired pH of the antibiotic solution.")

17/516,229 to the attention of AgroSource, and informed AgroSource of its intent to enforce its forthcoming patent rights related to AgroSource's induced and contributory infringement including damages pursuant to TJ BioTech's provisional rights under 35 U.S.C. § 154(d). See Exhibit 6. TJ BioTech informed AgroSource of the publication of the '229 Patent Application on May 31, 2023, which published as U.S. Patent Application Publication 2023/0134724 on May 4, 2023. See Exhibit 7.

40.     In addition, AgroSource had knowledge of the '956 Patent at least as of the date when it was notified of the filing of this action.

41.     AgroSource has contacted, marketed, and sold its Rectify™ to customers expressing interest in TJ BioTech's ReMedium TI®.

42.     AgroSource's infringement has caused TJ BioTech substantial harm, including lost sales, erosion of market share, erosion of price, and damage to TJ BioTech's reputation for quality and innovation. The ongoing infringement threatens TJ BioTech's market position and undermines the value of its patented technology, irreparably harming TJ BioTech.

### D.     AgroSource's False and Misleading Advertising

43.     In addition to committing acts of known patent infringement as detailed above, AgroSource has falsely and misleadingly advertised the quality of Rectify™ in violation of the Lanham Act, the Florida Deceptive and Unfair Trade Practices Act, and Florida Statute § 817.40, *et seq.*.

44.     TJ BioTech's ReMedium TI® utilizes pharmaceutical grade OTC. Testing has shown that ReMedium TI® has a purity of about 97%. ReMedium TI® has likewise been tested for impurities, and such testing has shown that the average total impurities is about 1.94%, and specifically that the Average Impurity E of ReMedium TI® is 0.113% (below the pharmaceutical requirement of not more than 0.20%). See Exhibit 8, Century Testing Analysis. As a result of

ReMedium TI®'s purity, ReMedium TI® is readily absorbed into a tree upon injection.

45.     AgroSource falsely and misleadingly advertises the quality of Rectify™ in Florida and throughout the United States, including by advertising that the active ingredient therein, OTC, is a pharmaceutical grade OTC to trade off of the goodwill of TJ BioTech's ReMedium TI®. For example, rather than acknowledge Rectify™ had performance issues due to its quality, AgroSource blamed the weather in Florida for Rectify™'s poor performance, stating the net effect of the environmental conditions across much of the citrus growing regions of Florida "is reduced evapotranspiration, which may temporarily slow uptake, movement and distribution of Rectify™ within trees." See Exhibit 9, AgroSource Tech Bulletin No. 47 (March 8, 2023).

46.     AgroSource then issued a December 22, 2023 press release to the public and purchasers in Florida and throughout the United States, stating that Rectify™ has always "been, and always will be, formulated using analytically certified, pharmaceutical-grade active ingredients meeting all Pharmacopeia standards for purity and product quality." Exhibit 10, Rectify™ Response (December 22, 2023).

47.     AgroSource doubled down on its false and misleading advertising in August 2024, again making this false and misleading statement that Rectify™ is "Pharmaceutical Grade" directly to potential purchasers in Florida at the Citrus & Specialty Crop Expo:



48.     On information and belief, AgroSource has directly marketed its Rectify™ to purchasers and potential purchasers as including pharmaceutical grade OTC.[2]

49.     AgroSource's advertising of the quality of its Rectify™ is false and misleading. When AgroSource was seeking SLN Approval for Rectify™ from FDACS, the oxytetracycline hydrochloride source that was identified for AgroSource's Rectify™ comes from an EPA registered OTC source having EPA Reg. No. 91275-2. Exhibit 11, AgroSource FDACS Communication a p. 11.

50.     The label for the OTC offered under EPA Reg. No 91275-2, clearly states that it is a "non-sterile, non-pharmaceutical grade" product, confirming AgroSource's marketing that

---

[2] Much of the marketing of agricultural products occurs "under the radar" in targeted communications to purchasers, including wholesalers, retailers and others. Like the consuming public, TJ BioTech is not privy to AgroSource's direct communications; however, as is typical of most marketing campaigns, for every publicly available statement or piece of information there are many unseen and unheard sales pitches and additional pieces of evidence that will only come to light through discovery.

Rectify™ is pharmaceutical grade is false and misleading. Exhibit 12, EPA Reg. No. 91275-2.

51.    Testing confirmed that Rectify™ is not pharmaceutical grade. The testing showed that the purity of Rectify™ is 90%, that Rectify™ has average total impurities of 2.71%, and the average impurity E of Rectify™ is 0.263%, which is greater than the limit for pharmaceutical grade products of not more than 0.20%. See Exhibit 8, Century Testing Analysis.

52.    On information and belief, AgroSource's false and misleading marketing and promotion of the OTC utilized in its Rectify™ product as being pharmaceutical grade has succeeded because customers have relied on AgroSource's advertising. TJ BioTech's customers, including wholesalers, vendors, and retailers, purchased AgroSource's Rectify™ instead of ReMedium TI®, and users have bought and used Rectify™ instead of ReMedium TI® as a result of that advertising.

53.    AgroSource's literally false and misleading advertising of Rectify™ is material to purchasing decisions of AgroSource's customers. The grade of OTC utilized in Rectify™ is an important and inherent characteristic of any treatment for OTC and is particularly critical for a systemically delivered treatment that is injected into a tree because impurities affect the uptake of the formulation by citrus. On information and belief, AgroSource's customers would not have purchased, nor continued to purchase Rectify™, instead of ReMedium TI®, had AgroSource truthfully labeled, advertised, and promoted its Rectify™ as not containing pharmaceutical grade OTC.

54.    TJ BioTech cannot control the quality of AgroSource's Rectify™. Because of AgroSource's false advertising of Rectify™, users of Rectify™ who have unfavorable experiences due to its quality are likely to think less of ReMedium TI®.

55.    While AgroSource's literally false and misleading advertising has injured and will continue to injure TJ BioTech, it has at the same time unjustly enriched and will continue to

unjustly enrich AgroSource. Indeed, on information and belief, AgroSource itself believes that due to Rectify™'s lower price point than ReMedium TI® that Rectify™ has saved the citrus industry $65 Million dollars in this head-to-head market.



56.     However, were AgroSource to utilize pharmaceutical grade OTC in its Rectify™, and/or invest in the extensive research and development efforts as TJ BioTech has done, AgroSource could not offer Rectify™ at its current price point.

**Count I**
**(Violation of 35 U.S.C. § 271(a)**
**Infringement of U.S. Patent No. 12,382,956)**

57.     TJ BioTech repeats and realleges the foregoing paragraphs as though fully alleged herein.

58.     TJ BioTech is the owner of U.S. Patent No. 12,382,956, which covers specific methods of generating an acidified antibiotic solution and for its uses in treating a bacterial infection in a plant.

59.     On information and belief, AgroSource has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '956 Patent by following the instructions of the Rectify™ label through internal testing, demonstration, and/or field use of Rectify™, including through the use of Rectify™ in citrus, wherein such

conduct embodies the patented methods without authorization from TJ BioTech.

60.     On information and belief, AgroSource's infringement includes unauthorized replication of TJ BioTech's patented methods without license or permission from TJ BioTech.

61.     AgroSource's infringement is willful, knowing, and intentional, as it was aware of TJ BioTech's patent rights through the filing of this lawsuit, and further AgroSource was aware of or willfully blind to TJ BioTech's patent rights through the due diligence process given TJ BioTech's notice to AgroSource of its forthcoming infringement before the issuance of the '956 Patent. However, AgroSource has continued its infringing activities after the issuance of the '956 Patent.

62.     As a result of AgroSource's infringement, TJ Biotech has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. TJ BioTech seeks enhanced damages under 35 U.S.C. § 284, attorneys' fees under 35 U.S.C. § 285, and injunctive relief to prevent further infringement.

<u>**Count II**</u>
**(Violation of 35 U.S.C. § 271(b)**
**Induced Infringement)**

63.     TJ BioTech repeats and realleges the foregoing paragraphs as though fully alleged herein.

64.     AgroSource has indirectly infringed and continues to indirectly infringe the '956 Patent by inducing others to directly infringe, literally and/or by the doctrine of equivalents, the '956 Patent. AgroSource has induced and continues to induce customers and end-users of Rectify™, including, but not limited to, AgroSource's customers, employees, partners, contractors, potential customers, end-users and/or others, to directly infringe the '956 Patent by providing Rectify™ for their use.

65.     AgroSource has taken active steps, directly, indirectly, or through contractual

relationships with others, with the specific intent to cause them to use Rectify™ in a manner that infringes one or more claims of the '956 Patent, including. Such steps by AgroSource have included, directing customers, personnel, contractors, or end-users to use Rectify™ according to the label's directions, without deviation, which results in the use of Rectify™ in an infringing manner, and further by advertising and promoting the use of Rectify™ in an infringing manner, distributing instructions through the Rectify™ label which guides users to use Rectify™ in an infringing manner, and/or providing instructional and technical support for the use of Rectify™ in an infringing manner.

66.     AgroSource has been performing these steps, which constitute induced infringement with the knowledge of the '956 Patent and with the knowledge and specific intent that the induced acts constitute infringement. AgroSource is and has been aware that the normal and customary use of Rectify™ by others would infringe the '956 Patent.

67.     AgroSource's infringement of the '956 Patent is ongoing.

68.     As a result of AgroSource's induced infringement, TJ Biotech has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. TJ BioTech seeks enhanced damages under 35 U.S.C. § 284, attorneys' fees under 35 U.S.C. § 285, and injunctive relief to prevent further infringement.

**<u>Count III</u>**
**(Violation of 35 U.S.C. § 271(c)**
**Contributory Patent Infringement)**

69.     TJ BioTech repeats and realleges the foregoing paragraphs as though fully alleged herein.

70.     AgroSource has indirectly infringed and continues to indirectly infringe the '956 Patent by contributing to the infringement of the '956 Patent. AgroSource has contributed and continues to contribute to the direct infringement of the '956 Patent by its customers, personnel,

contractors, and end-users of Rectify$^{TM}$, which when used causes direct infringement of one or more claims of the '956 Patent.

71.    Rectify$^{TM}$ has special features that are specially designed to be used in an infringing way, including through its label directions, and has no substantial uses other than ones that infringe one or more claims of the '956 Patent. The special features constitute a material part of the invention of one or more claims of the '956 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

72.    AgroSource therefore actively, knowingly, and intentionally has been and continues to materially contribute to its partners', vendors', and/or third-parties' infringement of one or more claims of the '956 Patent, literally and/or by the doctrine of equivalents, by making distributing, offering for sale, and selling Rectify$^{TM}$ for use in a manner that infringes one or more claims of the '956 Patent.

73.    AgroSource's contributory infringement is ongoing.

74.    As a result of AgroSource's contributory infringement, TJ Biotech has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. TJ BioTech seeks enhanced damages under 35 U.S.C. § 284, attorneys' fees under 35 U.S.C. § 285, and injunctive relief to prevent further infringement.

**<u>Count IV</u>**
**(False Advertising in Violation of the**
**Lanham Act, 15 U.S.C. § 1125)**

75.    TJ BioTech repeats and realleges the foregoing paragraphs as though fully alleged herein.

76.    TJ BioTech has invested significant time, money, and other resources in developing the market for ReMedium TI$^{®}$, and in creating goodwill and trust with the community and its consumers.

77.     AgroSource has made and continues to make false and misleading statements in interstate commerce, including on its website, advertising, and promotional materials to customers, potential customers, and other members of the public regarding the quality of AgroSource's Rectify™.

78.     AgroSource's false and misleading statements have and will continue to affect goods that have travelled and will travel in interstate commerce.

79.     AgroSource's false and misleading statements as to the quality of Rectify™ go to an inherent characteristic of its Rectify™.

80.     AgroSource's false and misleading statements have or will have the effect of misleading customers, potential customers and other members of the public, including but not limited to, the beliefs that AgroSource's Rectify™ contains pharmaceutical grade OTC.

81.     AgroSource's statements, including those described in Paragraphs 43-56 are literally false and/or misleading commercial speech in violation of Section 43(a) of the Lanham Act, 15, U.S.C. § 1125(a), which provides in relevant part that a "person who, or in connection with any goods or services" "uses in commerce any" "false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act."

82.     AgroSource's false and misleading statements are material in that it relates to an inherent characteristic of Rectify™ and has influenced and will continue to influence the decisions of customers, potential customers, and other members of the public, including, but not limited to, the decisions to purchase Rectify™, such as the choice to purchase AgroSource's Rectify™ rather than TJ BioTech's ReMedium TI®.

83.     At all relevant times, AgroSource knew that its Rectify™ did not contain pharmaceutical grade OTC. AgroSource has made these false and misleading statements knowingly, willfully, and/or negligently.

84.     TJ BioTech has suffered and will in the future suffer harm as a result of AgroSource's false and misleading statements, including diminished reputation, loss of goodwill, lost sales, loss of future revenue, loss of investments, loss of customers, and/or confusion about the comparative attributes of TJ BioTech's ReMedium TI® and AgroSource's Rectify™.

85.     AgroSource's conduct violates Section 43(a) of the Lanham Act in a manner that harms TJ BioTech. TJ BioTech is therefore entitled to all relief available under the Lanham Act, 15 U.S.C. § 1117(a), including damages for AgroSource's Lanham Act violations, an accounting of profits made by AgroSource on sales of Rectify™, as well as recovery of the costs of this action. In the circumstances of this case, the Court may enhance TJ BioTech's damages, up to trebling its actual damages.

86.     AgroSource's conduct makes this an exceptional case entitling TJ BioTech to recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

87.     Unless enjoined by this Court, AgroSource's acts will continue to irreparably injure TJ BioTech. Pursuant to 15 U.S.C. § 1116, TJ BioTech is entitled to preliminary and permanent injunctive relief to prevent AgroSource's continuing unlawful acts.

**<u>Count IV</u>**
**(Violation of Florida's Deceptive**
**and Unfair Trade Practices Act ("FDUTPA"),**
**Fla. Stat. § 501.201, et seq.)**

88.     TJ BioTech repeats and realleges the foregoing paragraphs as though fully alleged herein.

89.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") broadly declares in §501.204(1) that "[u]nfair methods of competition, unconscionable acts or practices,

and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.

90.     AgroSource's false and misleading advertising and marketing of the quality of its Rectify™ product, including the false and misleading advertising that Rectify™ utilizes pharmaceutical grade OTC when it does not, in connection with its sales of Rectify™, is an unfair or deceptive act or practice that violates FDUTPA.

91.     As a direct and proximate result of AgroSource's unfair or deceptive trade practices, TJ BioTech has suffered and will continue to suffer loss of reputation among its purchasers and potential purchasers, and AgroSource will continue to unfairly acquire income, profits, and goodwill.

92.     As a result of AgroSource's conduct, TJ BioTech has been damaged.

93.     The damage to TJ BioTech is irreparable.

94.     Unless enjoined, AgroSource's unfair and deceptive practices will continue to deceive the public and injure competition.

95.     AgroSource's violation of FDUPTA is willful.

96.     TJ BioTech is therefore entitled to all relief available under FDUPTA, including a civil penalty of not more than $10,000 for each such violation and reasonable attorney's fees and costs.

**Count V**
**(Violation of Fla. Stat. § 817.40, et seq.**
**(Misleading Advertising))**

97.     TJ BioTech repeats and realleges the foregoing paragraphs as though fully alleged herein.

98.     Section 817.41, Florida Statutes, prohibits the making or dissemination of misleading advertisements, and declares such misleading advertisements to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

99.     AgroSource's false and misleading advertising and marketing of the quality of its Rectify™ product, including the false and misleading advertising that Rectify™ utilizes pharmaceutical grade OTC when it does not, in connection with its sales of Rectify™, violates Section 817.41, Florida Statutes.

100.    As a direct and proximate result of AgroSource's false advertising, TJ BioTech has suffered and will continue to suffer loss of reputation among its purchasers and potential purchasers, and AgroSource will continue to unfairly acquire income, profits, and goodwill.

101.    As a result of AgroSource's conduct, TJ BioTech has been damaged.

102.    The damage to TJ BioTech is irreparable.

103.    Unless enjoined, AgroSource's unfair and deceptive practices will continue to deceive the public and injure competition.

104.    TJ BioTech is therefore entitled to all relief available under Section 817.41, including but not limited to costs, including reasonable attorney's fees, actual damages, and punitive damages.

**<u>Request for Relief</u>**

WHEREFORE, TJ BioTech respectfully prays that this Honorable Court enter judgment in its favor and against AgroSource, as follows:

(a)     A judgment that AgroSource has infringed, either directly or indirectly, the '956 Patent;

(b)     An order preliminarily and/or permanently enjoining AgroSource, together with its directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, other related business entities, and all persons in active concert or privity with AgroSource and its successors and assigns, from directly or indirectly infringing the '956 Patent;

(c)      A judgment that awards TJ BioTech's the damages adequate to compensate for AgroSource's infringing acts in accordance with 35 U.S.C. § 284;

(d)      A judgement that awards TJ BioTech's the damages it has suffered prior to the issuance of the Asserted Patent in accordance with 35 U.S.C. § 154(d);

(e)      In the event that a permanent injunction is not granted, damages for any continuing future infringement of the '956 Patent;

(f)      A judgment declaring AgroSource's infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284;

(g)      A finding that this case is exceptional under 35 U.S.C. § 285, and awarding TJ BioTech its reasonable attorneys' fees incurred in connection with this action;

(h)      A judgment that AgroSource has violated 15 U.S.C. § 1125(a), including in connection with its false and misleading promotion of its Rectify$^{TM}$;

(i)      An injunction enjoining AgroSource, together with its directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, other related business entities, and all persons in active concert or privity with them and their successors and assigns, from making false and misleading statements about TJ BioTech's ReMedium TI$^{®}$ and/or AgroSource's Rectify$^{TM}$;

(j)      An order requiring AgroSource to take all necessary corrective measures to correct any false and misleading impressions created among customers, potential customers, and the public by AgroSource's false and misleading statements;

(k)      A judgement that awards TJ BioTech damages for AgroSource's violation of 15 U.S.C. § 1125(a), including but not limited to TJ BioTech's lost business and profit, harm to TJ BioTech's goodwill and reputation, and AgroSource's ill-gotten and unjustly derived revenues;

(l)    An award of punitive and exemplary damages for AgroSource's violation of 15 U.S.C. § 1125(a);

(m)    An award of attorneys' fees TJ BioTech incurred for AgroSource's violations of 15 U.S.C. § 1125(a);

(n)    A judgment that AgroSource has engaged in unfair and deceptive acts and practices in violation of the Florida Statues and an award of statutory damages;

(o)    A judgment that AgroSource has engaged in false advertising in violation of the Florida Statutes and an award of TJ BioTech's actual damages and punitive damages;

(p)    Awarding TJ BioTech its costs and expenses in this action, including expert and witness fees; and

(q)    Such other and further relief as the Honorable Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, TJ BioTech respectfully demands a trial by jury on all issues triable by jury.

Dated: August 13, 2025                     Respectfully submitted,

*/s/ Allison Guaty*
Allison Guaty, FBN 1039032
BUCHANAN INGERSOLL & ROONEY PC
One Biscayne Tower
2 S. Biscayne Blvd., Ste. 1500
Miami, Florida 33131-1822
Telephone: (305) 347-5716
allison.guaty@bipc.com

S. Lloyd Smith (*Pro Hac Vice forthcoming*)
BUCHANAN INGERSOLL & ROONEY PC
1700 K St. N. W., Suite 300
Washington, D.C., 20006
(202) 452-7900
(202) 452 7989
lloyd.smith@bipc.com

James T. Wilcox (*Pro Hac Vice forthcoming*)
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314
(703) 838-6667
(703) 836-2021 (facsimile)
james.wilcox@bipc.com

***Attorneys for TJ BIOTECH, LLC***